Ms. Babayan became embroiled in a political rivalry between two factions of the Armenian government when she witnessed a political assassination behind her place of work. Thereafter, she suffered an escalating pattern of persecution, which eventually caused her to flee to the United States, including receiving continuous death threats, being nearly run over by a tied her down and beat her. I'd like to focus the Court's attention today on two findings made by the IJ, neither of which are supported by substantial evidence. First, the adverse credibility determination, and second, the IJ's finding that Ms. Babayan's persecution was not on account of political opinion. First, credibility finding must be supported by specific cogent reasons and must have a legitimate basis in the record, and the IJ's finding did not meet this standard. The government attempted to justify only four of the numerous reasons put forth by the IJ in its finding. First, the IJ claimed that Ms. Babayan was not credible because she embellished her story on cross-examination when she felt that her testimony was not going well. However, this claim is just not supported by a fair reading of the record. Ms. Babayan consistently testified to receiving numerous continuous and escalating death threats, and the alleged inconsistencies pointed to by the IJ and the government are simply specific responses to specific questions that Ms. Babayan was asked during cross-examination by INS counsel. Second, the IJ faulted Ms. Babayan for failing to corroborate the injuries that she suffered when she was attacked. However, this Court has held that a petitioner must have the opportunity to explain a failure to provide corroborating evidence if that failure is to be held against her. Ms. Babayan did not have that opportunity here. What about this case is persuasive that she was persecuted for a political reason? She was a – Armenia didn't have a very good witness protection program at that time. And she was being bothered by people who thought she might testify against somebody. But what's political about that? Isn't that just sort of like street gangs and strips and the bloods and so on? They don't protect their witnesses either. Right. I don't believe that her persecution was wholly on account of the killer's fear of being prosecuted, Your Honor. This Court has repeatedly held that mixed motives may suffice to prove an asylum claim and that an asylum applicant may be eligible as long as there's a reasonable likelihood that the persecution was at least in part on a protected ground. Here I think there's substantial evidence in the record by which to believe either that Ms. Babayan was persecuted on account of an imputed political opinion or that she was persecuted on account of her own affirmative political opinion of opposition to corruption. Well, she definitely was having a hard time and she lost her job. But what was political about losing her job? Maybe the boss didn't like it. Well, Your Honor, she did lose her job, but in addition to that, she was also repeatedly threatened and she was attacked in her home when two government officials who were pretending to be electric company employees broke in and attacked her. The political circumstances here provide strong evidence that the political opinion was at least a part of her persecutor's motivation. First, there's ample evidence in the record from which would cause this Court to conclude that she was persecuted on account of an imputed political opinion because, first of all, well, the circumstances of the killing that she witnessed was caused by a rivalry between the internal affairs and the treasury departments in Armenia. And there's strong evidence that her persecutors would have imputed an opinion to her that she was allied with the treasury official and against the internal affairs department, including the fact that she had a strong relationship with the treasury official, which relationship she continued to have throughout her period of cooperation. Also that she identified the killers as internal affairs employees from the very beginning of her cooperation. And finally, her relationship with her boss, which was contentious, as she was consistently urging her boss to stop his own corrupt and illegal practices. And her boss was closely a close political ally of the minister of internal affairs. So I would submit that all these circumstances create a high likelihood that her persecution was at least in part on account of an imputed political opinion. I would also say that there's a strong basis in the record to find that Ms. Hassan's case is based on her affirmative political belief of opposition to corruption. This court has held and reaffirmed last week in the Hassan case that opposition to corruption may constitute a political opinion for purposes of asylum. Here there's strong evidence in the record again that her persecutors would have known that she possessed this opinion, and it's likely to conclude that they would have acted at least in part on this basis. This court has held repeatedly that a petitioner need not prove conclusively why she's being persecuted. She must only show evidence that would make a reasonable person fear that the persecution would be at least in part on account of a political opinion. The kind of past persecution that carries forward and justifies a fear of future persecution. Yes, I believe that her treatment does constitute past persecution. As I said, she was repeatedly threatened with death over a period of many months. She was nearly hit by a car, and finally that conduct escalated to an attack in her home where she was tied to a chair and hit and kicked, and her hair was pulled by government officials. I think that this certainly would constitute past persecution and would entitle her to the rebuttable presumption of future persecution. Even if the court did not find that this constituted past persecution, however, I would submit that Ms. Babian has demonstrated a well-founded fear of future persecution based on her conversations with her husband and other family members that she testified to where she said that they were telling her that people were still looking for her and that she should not return to Armenia because she would be killed. Just going quickly over the IJ's other bases for its credibility finding, the IJ also found it implausible that Petitioner remained in Armenia after she was threatened. However, this court has held that Petitioner or an asylum applicant's failure to leave his or her home, particularly where the threats are becoming more menacing as they were here. And finally, the IJ supported its credibility finding by saying that it was implausible that Petitioner would continue to cooperate with investigators in spite of receiving threats and in spite of the fact that the investigators were members of the same department as the killers. However, this conclusion is really no more than the IJ's speculation and unsupported personal opinion. Ms. Babyan testified that she did not know the killing was politically motivated when she began cooperating with investigators. She also testified that they were factions within the internal affairs department and that this caused them to change investigators at one point. And finally, Ms. Babyan testified that she continued to cooperate in spite of being threatened because she wanted to see justice done, because she testified that it so rarely happens in Armenia that these types of cases are brought to justice. I would submit that there's no implausibility in Ms. Babyan continuing to do what she thinks is right in spite of being afraid. If the court has no further questions, I'll reserve the remainder of my time. Thank you. If it pleases the Court, my name is Don G. Scroggin. I'm counsel for the Respondent, in this case, the United States Attorney General. Your Honors, in this case, there are also two independent grounds for denying asylum to Ms. Babyan. The first is that Ms. Babyan is a member of the  Armenia. The first is that the immigration judge found her not to be credible. I would like to focus, however, on what I believe to be the heart of the case, the main pillar that the immigration judge found upon which he denied asylum, and that is that even if Ms. Babyan is credible, even if she were credible, there is no evidence that she had any political opinion in any protected ground under the Immigration and Nationality Act. There's no evidence that she had any political opinion or that she had any, or that her alleged persecutors in any way imputed a political opinion to her. This whole case... So it's your position that an anti-government corruption stance doesn't qualify as a political opinion? No. There's no evidence in the record that she was in any way opposed to government corruption in Armenia. There are many reasons why one cooperates in... But that was her testimony, wasn't it? That was her testimony. So it depends on the credibility determination. If her testimony is believable, then she does meet the unaccountable, doesn't she? I would suggest to her, not by the standards that this Court has established for determining when an opposition to government corruption justifies such a finding. For example, the case of Grava, which is the main case that Petitioner relies upon for the proposition that an opposition to government corruption, in that case, this Court held that in Grava, the facts were quite different. It was not a private opposition to government corruption. In Grava, the local press had well publicized Grava's crusade, which was a public crusade against government corruption, he was a whistleblower. And in the Grava case, which is the linchpin of Petitioner's foundation for arguing that an opposition to government corruption supports such finding, this Court held that the salient question is whether Grava's actions were directed towards a government institution or only against individuals whose cooperation was aberrational. The fact, this whole case is about an investigation of a crime. The fact that the perpetrators of the crime may have incidentally worked for the government does not change that. Well, what about the testimony that the people who bothered her afterward were also government employees? Well, the record does not reflect that, Your Honor. The record reflects that when she was asked, how do you know that the people who issued these threats to you work for the government, her response was, and I believe this is a direct quote from the record, who else? Because she assumed that anyone calling her and threatening her must be from the government. Didn't she say she had recognized a couple of them? She did, Your Honor, but those are not the people she identified as threatening her. She identified the two people that may have been involved in the crime, who incidentally worked for the government. The people who gave her threats and the people who attacked her in her apartment, if these allegations are true, are unknown to her. She was unable to identify them. She merely assumed that they must be somehow connected. There's no evidence that ---- Well, in some circumstances, that can be a fairly safe assumption. It could, Your Honor. I'm merely pointing out to the evidence in the record, and I would say that, Your Honor, even if this Court were to draw that inference here, that there is an alternative explanation for this evidence, I would again come back to the standard of review of this Court, is that that evidence must be so overwhelming that no reasonable fact finder could fail to find that the immigration judge was in error. And I would say this evidence does not support that. That would be speculation, I would respectfully suggest. There's simply no evidence that Mrs. Babion had any political opinion, nor is there any evidence that anyone imputed a political opinion to her. Mrs. Babion worked in the laundry. She happened to be nearby when a crime was committed. That's the beginning and end of her political involvement. Her interest in seeing justice done, I would suggest, is merely another one of the post hoc explanations and rationalizations that are in Petitioner's brief. There's not evidence in the record that she had any interest in seeing justice done other than her cooperation in the investigation of a crime. And I would again suggest there's many reasons why a citizen cooperates with the police who are investigating a crime. While there are, I would suggest, foundations. Didn't she testify her employer told her not to get involved? Yes, Your Honor, but there's no evidence that that was a political threat or in any way involved with politics. Again, her employer happens to be involved in politics. She was dealing with his ñ she opposed her employer because of his shady dealings, that he bought uncertified chemicals, cheap chemicals that she felt were harming people. It had nothing to do with politics. At least there's no evidence in the record that it had to do with politics. Your supervisor was sponsor ñ the Minister of Internal Affairs was sponsoring his political activities? Your Honor, I would ñ I'm merely again pointing to his ñ there's no evidence in the record that would support that anyone imputed a political opinion to Mrs. Bavion. This is a matter about a criminal investigation. While I think there are firm foundations to the immigration judge's finding of credibility, of no credibility, the fact that her testimony was inconsistent, that she seemed ñ did in fact come up with more threats and more intense threats upon cross-examination, not upon direct examination, and she did so, the immigration judge found, when he perceived that she felt that her case was not going well. It's also implausible that if she were in such fear of the threats she's receiving, that she would continue to cooperate with the investigators. And finally, there's no cooperating evidence for her medical injury, for her injury to her toes that was allegedly a serious attack. Indeed, it is, I think, quite extraordinary that in the reply brief, Petitioner essentially throws away completely any injury that Petitioner might have suffered by saying that the reason she had no cooperating evidence, says Petitioner in her response brief, is that the injury was not so serious as to require medical attention. That's why she had no medical records. But I would like to return again to what I believe is the stronger component of this case. This case is, there's no nexus within a protected ground, even if you give Mrs. Babion credibility as a witness. Government corruption as a political opinion has been addressed in this case, I'm sorry, by this court, in such cases as Molina-Morales, where a Petitioner reported a rape by a public official. That case is much more like this case than the case of Gravas with a public crusade against corruption. I'm sorry, what was the name of that case? Molina-Morales. The size is 237F3R1048. In that case, this court held, and I'll quote, in order to establish an imputed political opinion, the applicant must show that his persecutors actually imputed a political opinion to him. And in the case where the Petitioner in Molina-Morales turned in a public official for a rape, the court found that the evidence suggests that he fears harm because of a personal matter. Where is the finding of the IJ here that you're arguing? I'm referring to the case of the court. I'm sorry, Your Honor, Molina-Morales. I know you are. I know you are. I'm trying to find the analogous finding in this record. Page 18. Page 18, in the record, it's number 70. At the top of the page, it says, Moreover, even if this court had found the Respondent credible, she has not established a nexus that any of the threats she received were on the basis of her race, religion, nationality, membership in a social group or political or imputed political opinion. That's what I'm referring to. And that's what I've been discussing, Your Honor. It appears that those who allegedly were threatening her were not motivated in any sense with regard to her political opinion, but were motivated rather to get themselves off of the prosecution. Dealing with the criminal investigation, Your Honor. That's the heart of this case and is even a stronger pillar than the finding of low credibility. No evidence in the record states that the anonymous persons who threatened her did so either in any relationship to the high political profile of the victim's father or in any other political aspirations of her boss. That's correct, Your Honor. There's simply no nexus to a protected ground. And at least the way you read our, I'll say, corruption cases, this is not the type of anti-corruption activity that qualifies as a political opinion. Not according to the case laws I read this circuit. Those where you have found such corruption constituting a political opinion is where one is in a removal proceeding, Your Honor. Okay. Thank you. Thank you. First I'd just like to address opposing counsel's reference to the Molina-Morales case regarding imputed political opinion. It is true that in that case the court held that it was only purely personal retribution and was not an account of political opinion. However, there's a striking difference between that case and the present case in that in Molina-Morales there was no evidence that the petitioner's attackers thought that he was aligned with the opposition to their political party. Rather, in this case, there is ample evidence in the record that would have led Ms. official and against them. I would submit that this case is much more similar to this court's case of Cordon Garcia, V.I.N.S., decided in 2000, in which the court held that a petitioner's presumed affiliation with an entity her persecutors oppose is the functional equivalent of a conclusion that she holds a political opinion opposite to that of her persecutors, whether or not she actually holds such an opinion. I would say this is absolutely the case here where a petitioner had an ongoing relationship with a treasury official that her persecutors would have known about because her boss knew that she was meeting with a treasury official, told her she was angry about it, and there's evidence in the record that her boss was closely allied with the Minister of Internal Affairs who was supporting her boss's candidacy. I would also say for the Grava case that opposing counsel discussed, I would say that the opposition does not have to be public. There's nothing in this court's cases that say opposition to corruption must be stated loudly in the public square. Here a petitioner clearly demonstrated in her testimony that she has a political belief of opposition to corruption, not just regarding an aberrational individual, as the court stated in Grava, but rather the systemic and institutionalized nature of the corruption in Armenia. And I see my time is out, so thank you. And the Court appreciates the participation in our pro bono program. And we will order the case submitted for decision. The next case for argument is Mnuchin v. Ashcroft.
judges: Schroeder, Goodwin, Tashima